# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:18-cv-00463-RJC-DSC

| | |
|---|---|
| **CHARLOTTE-MECKLENBURG BOARD OF EDUCATION,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**ALEAH BRADY,** *individually, and by and*<br>*through parent, Jason Brady*, **and JASON**<br>**BRADY,** *individually*, )<br>)<br>)<br>)<br>)<br>**Defendants.** | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's Amended Complaint, (DE 24), Defendants' Answer and Counterclaim, (DE 27), the Parties' briefs, (DEs 18, 19), and Plaintiff's Motion to Dismiss Defendants' Counterclaim, (DE 31). The Court has reviewed the pleadings, motions, exhibits thereto, and applicable law and has considered the Parties' briefed arguments. For the reasons stated herein, the Court concludes that Defendants' claims are not time barred because the withholding exception to the statute of limitations applies; and Defendants' counterclaim is dismissed without prejudice for failure to exhaust administrative remedies. In light of the Court's decision, Defendants' underlying IDEA claims that are pending before the ALJ on remand from the SHRO are now ripe for a decision on the merits from the ALJ.

## I.      BACKGROUND

### A.      Procedural Background

On January 22, 2018, Aleah Brady ("A.B."), by and through her parent, Jason Brady ("J.B.") (together, "Defendants") filed a Petition for Contested Case Hearing in the North Carolina Office of Administrative Hearings ("OAH"), alleging the Charlotte-Mecklenburg Board of

Education ("CMS") violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. On April 18, 2018, the ALJ issued a Final Decision which consisted of eight (8) paragraphs and did not contain any specific findings of fact or conclusions of law. (DE 12 at 21-24). The ALJ determined A.B. and her father knew or should have known of their claims prior to January 18, 2017, and the exceptions to the statute of limitations did not apply as CMS did not withhold information from A.B.'s parents that was required under state or federal law. (DE 12 at 21-24). The ALJ's decision did not reach the merits of A.B.'s underlying claims.

On April 23, 2018, A.B. and her father appealed the ALJ's Decision to the North Carolina State Board of Education and a SHRO was appointed to review the ALJ's Decision. (DE 12 at 340–41). The SHRO issued a written decision on May 27, 2018, reversing the ALJ's Decision and remanding the case. (DE 12 at 684-723). The SHRO held that the withholding exception to the IDEA's statute of limitations applied because CMS failed to provide notice to A.B.'s parents of the IDEA's procedural safeguards or issue a prior written notice of CMS' refusal to evaluate A.B. under the IDEA. (DE 12 at 721). The SHRO's Decision did not reach the merits of Defendants' underlying claims. (DE 12 at 721).

On August 22, 2018, CMS filed a Complaint before this Court seeking reversal of the SHRO's Decision, reinstatement of the ALJ's Decision, and dismissal of the underlying Petition in its entirety. (DE 1 at 8). On October 18, 2018, Defendants filed an Answer requesting this Court deny Plaintiffs' prayer for relief, uphold the SHRO's Decision, and find that the statute of limitations does not bar Defendants' IDEA claims. (DE 6 at 7).

During the pendency of this case, the Fourth Circuit Court of Appeals rendered a decision in *Johnson v. Charlotte-Mecklenburg Sch. Bd. of Ed.*, 20 F.4th 835 (4th Cir. 2021). The court clarified that under principles of federalism, and it's prior holding in *Kirkpatrick v. Lenoir Cnty*

*Bd. of Educ.*, 216 F.3d 380 (4th Cir. 2000), federal district courts do not possess "appellate review over state administrative IDEA complaints," and do not simply "affirm, reverse, or vacate" decisions from a state administrative agency. *Johnson*, 20 F.4th at 845–46. Thus, the Fourth Circuit concluded in *Johnson* that federal district courts lack authority to "remand" an IDEA case to a state agency. *Id.* at 17.

In light of the Fourth Circuit's holding in *Johnson,* on January 27, 2022, CMS filed an Amended Complaint requesting that this Court conduct an appropriate review of the SHRO's Decision, the administrative record, and enter an Order with an independent final legal determination that the allegations in Defendants' Petition are outside of the one-year statute of limitations applicable to IDEA claims under North Carolina law. (DE 24 at 9). On February 10, 2022, Defendants filed an Answer to CMS' Amended Complaint that included a counterclaim requesting this Court enter an Order with an independent final legal determination that CMS violated the procedural and substantive requirements of the IDEA, state law, and state and federal regulations, thus denying A.B. a FAPE; order CMS to provide A.B. with compensatory special education and related services for the amount of time the Court determines a FAPE was denied; order CMS to reimburse A.B.'s parents for any expenses incurred as a result of CMS' failure to meet the requirements of the IDEA, state law, and state and federal regulations, including but not limited to, the costs and expenses incurred for A.B. to attend any private therapies, and the tuition and all associated costs and expenses, including transportation, incurred for A.B. to attend a treatment center in New Hampshire and a therapeutic boarding school in Utah. (DE 27 at 34).

On March 2, 2022, CMS filed a Motion to Dismiss Defendants' Counterclaim for lack of subject-matter jurisdiction. (DE 31). In its Motion to Dismiss Defendants' Counterclaim, CMS argues that this Court does not have subject-matter jurisdiction over Defendants' counterclaim

3

because Defendants failed to exhaust all administrative remedies under IDEA prior to asserting their counterclaim. (DE 31). Additionally, CMS argues that none of the exceptions to IDEA's exhaustion requirement are applicable. (DE 31). In response, Defendants argue that after *Johnson* claims are exhausted once a student and her parents go through the administrative process prior to filing in federal court. (DE 33 at 10). Defendants further argue that if the counterclaim was not exhausted during the administrative process then an exception to the exhaustion requirement applies. (*Id.* at 12).

      **B.    Factual Background**

      A.B. was enrolled as a student in the Charlotte-Mecklenburg School District ("CMS District") from 2005 until 2015. (DE 12 at 687). In second grade, A.B. began exhibiting problematic behaviors, including self-injurious behaviors, expressing suicidal ideations, and crying in school due to expressed anxiety. (DE 12 at 135 ¶ 7). From 2011 through 2014, A.B. attended middle school in the CMS District. (DE 12 at 135 ¶ 11). A.B.'s anxiety and crying during classes increased and continued throughout middle school. (DE 12 at 135 ¶ 14). A.B.'s grades also significantly declined in middle school. (DE 12 at 207-09). Additionally, A.B. was absent a total of 166 times—114 excused and 52 excused. (DE 12 at 256-61). On multiple occasions, A.B. was hospitalized throughout middle school and made threats of suicide while at school. (DE 12 at 211-48; *id.* at 135 ¶¶ 15-17). In response to A.B.'s suicide threats, CMS required A.B.'s parents to have A.B. assessed by a psychologist or psychiatrist before allowing A.B. to return to school. (DE 12 at 135 ¶ 17; *id.* at 246-48).

      On February 26, 2013, A.B.'s Section 504 team reconvened. (DE 12 at 252-54). Prior to the meeting, A.B.'s father provided the team with an email from A.B.'s psychologist, Dr. Morganstein. J.B. explained that he wished to discuss the topics raised in Dr. Morganstein's email during the 504 team meeting. (DE 12 at 136 ¶ 24; *id.* at 255). Dr. Morganstein's email stated, in

part: "We understand that with her specific diagnoses, [A.B.] qualifies as OHI and is eligible for an IEP – is tutoring covered by an IEP? Is there something that is covered by an IEP that can benefit her?" (DE 12 at 255). No one from CMS convened a Referral Meeting to discuss A.B.'s eligibility for an IEP. (DE 12 at 136 ¶ 25).

On September 4, 2013, A.B.'s 504 team convened to review her 504 Plan. (DE 12 at 262-63). Again, the team determined that A.B. required a BIP. (DE 12 at 262). After the September 4, 2013 meeting, J.B. signed a parental notice form and checked a box directly above his signature stating "I have received a copy of the Parent-Student Rights and Procedural Safeguards." (DE 12 at 588). Despite A.B.'s eligibility for a BIP, excessive absences, hospitalizations due to the impact of her disabilities, and below average grades, no one from CMS referred A.B. for an evaluation to determine if she qualified for services under the IDEA. (DE 12 at 136-37 ¶¶ 16, 30).

On November 4, 2015, A.B. attempted to commit suicide at school. (DE 12 at 275). The next day the assistant principal of A.B.'s school contacted A.B.'s father to inform him that A.B. had attempted suicide at school, and A.B.'s parents needed to plan for A.B. to attend school elsewhere because the school was not prepared to deal with A.B. (DE 12 at 137 ¶ 38).

At the advice of medical professionals, A.B.'s parents removed A.B. from CMS and enrolled her at Mountain Valley Treatment Center, a short-term residential treatment center located in New Hampshire, in December 2015. (DE 12 at 137 ¶ 45). A.B. remained at Mountain Valley until May 2016.[1] (DE 12 at 137 ¶ 46). Following her discharge from Mountain Valley, A.B. began attending Maple Lake Academy, a therapeutic boarding school located in Utah. (DE 12 at 137 ¶ 47). A.B. returned home in December 2017. (DE 12 at 137 ¶ 49). As of March 2018, A.B. lived at home, remained enrolled at Maple Lake Academy, and took classes online. (DE 12 at 137 ¶¶ 49-

---

[1] The cited affidavit incorrectly states that "A.B. remained at Mountain Valley until May 2015." It should state "A.B. remained at Mountain Valley until May 2016."

50). Throughout this time period, from 2005 to 2018, CMS never attempted to schedule a referral meeting to determine if A.B. should be evaluated for services under the IDEA. (DE 12 at 137 ¶ 51).

## II. STANDARD OF REVIEW

Courts use a "modified de novo" standard when reviewing an administrative decision under the IDEA, where deference is given to findings of fact that were regularly made by the ALJ. *Kuszewski v. Chippewa Valley Sch.*, 131 F. Supp. 2d 926, 929 (E.D. Mich. 2001). A Court may set aside an ALJ's decision "only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both." *Id.* However, district courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982).

"[I]n reviewing state administrative decisions in IDEA cases, courts are required to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings." *Doyle v. Arlington County School Bd.*, 953 F.2d 100, 103 (4th Cir. 1991) (citing *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). An ALJ's factual findings are presumed correct if "regularly made." *Id.* at 105. In the Fourth Circuit, "[w]hen determining whether a hearing officer's findings were 'regularly made,' our cases have typically focused on the process through which the findings were made." *J.P. v. County Sch. Bd*, 516 F.3d 254, 259 (4th Cir. 2008). Factual findings are "regularly made" when the hearing officer conducts "a proper hearing, allowing the parents and the School Board to present evidence and make arguments, and the hearing officer by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to

decide the case." *Id.* "Factual findings are not regularly made if they are reached through a process that is far from the accepted norm of a fact-finding process." *Id.*

While factual findings that are regularly made are given deference, if an ALJ's determination is based on a misunderstanding of the law, misunderstanding of fact, and contains insufficient reasoning, it is entitled to little, if any, deference. *Combs v. Sch. Bd. of Rockingham Cnty.*, 15 F.3d 357, 361 (4th Cir. 1994); *Q.C-C. v. D.C.*, 164 F. Supp. 3d 35, 49 (D.D.C. 2016). No deference is accorded an IDEA administrative officer's conclusions of law as these conclusions are reviewed de novo. *E.L. ex rel. G.L. v. Chapel Hill-Carrboro Bd. of Educ.*, 975 F. Supp. 2d 528, 537 (M.D.N.C. 2013); *Fitzgerald v. Fairfax Cty. Sch. Bd.*, 556 F. Supp. 2d 543, 558–59 (E.D. Va. 2008). Credibility determinations, whether explicit or implicit in an ALJ's decision, are entitled to the same deference on appeal. *County Sch. Bd. v. Z.P.*, 399 F.3d 298, 307 (4th Cir. 2005).

## III. DISCUSSION

Defendants' IDEA claims are not time barred because the withholding exception to the statute of limitations applies, and Defendants' counterclaim is dismissed without prejudice for failure to exhaust administrative remedies. As such, Defendants' underlying IDEA claims are still pending before the ALJ on remand from the SHRO and are now ripe for a decision on the merits from the ALJ.

### A. Statute of Limitations Under IDEA

#### i. Legal Standard

"The IDEA provides funds for states to educate children with disabilities, subject to conditions imposing substantive requirements on the education that is provided." *R.F. v. Cecil Cty. Pub. Sch.*, 919 F.3d 237, 241 (4th Cir. 2019). "In return for the receipt of federal education funding, states are required by the IDEA to provide each of their disabled children with a FAPE [free appropriate public education]." *M.M. v. Sch. Dist.*, 303 F.3d 523, 526 (4th Cir. 2002). "[A] FAPE

7

comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748–49 (2017) (quoting 20 U.S.C. § 1401(9), (26), (29)).

To be eligible for special education under IDEA, a child's disability must qualify under at least one (1) of the following statutory categories:

> (i) intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and
> (ii) who, by reason thereof, needs special education and related services.

20 U.S.C. 1401(3)(A). Students suspected of having a disability covered by the IDEA, and that are in need of special education and related services for their qualifying disability, may be eligible under IDEA. *See E.S. v. Konociti Unified Sch. Dist*., 2010 U.S. Dist. Lexis 125503, at 13-15 (N.D. Cal. Nov. 16, 2010) (noting that schools are required to evaluate a student for specialized instruction when a district knows or has reason to know that the student may have a qualifying disability and requires special education and related services as a result).

"The mechanism by which a state provides a FAPE is an IEP [individualized education plan]—a document that describes the child's unique needs and the state's plan for meeting those needs." *R.F*., 919 F.3d at 241. "The IEP is to be formulated by an IEP Team consisting of the child's parents, one of the student's regular teachers, a special education teacher, a representative of the school board, an individual who can interpret evaluation results and, whenever appropriate, the disabled child." *A.B. v. Lawson*, 354 F.3d 315, 319 (4th Cir. 2004). An IEP must contain a statement of the child's present levels of academic achievement and functional performance, measurable annual goals designed to meet the child's unique needs, a description of how the child's

8

progress towards those goals will be measured, the special education and related services that will be provided to the child, and an explanation of the extent to which the child will participate with nondisabled children in the regular class. 20 U.S.C. § 1414(d)(1)(A)(i).

North Carolina has a one-year statute of limitations for filing any denial of a FAPE claim under the IDEA. N.C. GEN. STAT. § 115C-109.6(b). For an alleged violation, the petition must be filed "not more than one year before the party knew or reasonably should have known about the alleged action that forms the basis of the petition." *Id.* However, the statute of limitations "shall not apply to a parent if the parent was prevented from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the petition, or (ii) the local educational agency's withholding of information from the parent that was required under State or federal law to be provided to the parent." N.C. GEN. STAT. § 115C-109.6(c). The pertinent portion of the statute at issue here is the withholding exception in part two which tolls the statute of limitations when schools fail to provide required information to parents under the IDEA.

      ii.   <u>Discussion</u>

CMS argues that the SHRO's application of the withholding exception to the IDEA's statute of limitations is improper. This Court disagrees as CMS withheld a prior written notice ("PWN") and and a copy of the procedural safeguards after J.B. requested that his daughter A.B. be evaluated under the IDEA.

The text of the IDEA details that "a parent of a child . . . . may initiate a request for an initial evaluation to determine if the child is a child with a disability." *See* 20 U.S.C. § 1414(a)(1)(B). When a parent requests an evaluation under the IDEA, at least two legal duties of the school district are triggered. First, the school district must provide "a copy of the procedural

9

safeguards" to the "parents of the child with a disability . . . upon initial referral or parent request for evaluation." 20 U.S.C. § 1415(d)(1)(A); 34 C.F.R. § 300.504(a). Second, school districts must provide parents with a PWN whenever the school refuses "to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child." 34 C.F.R. § 300.503(a); *See R.S. v. Bd. of Dirs. of Woods Charter Sch. Co.*, No. 1:16-cv-119, 2019 U.S. Dist. LEXIS 33760, at *46 (M.D.N.C. Mar. 4, 2019). The PWN must include "a description of the action proposed or refused by the agency," "an explanation of why the agency proposes or refuses to take the action," and "a statement that the parents of a child with a disability have protection under the procedural safeguards," among other things. 20 U.S.C. § 1415(c)(1); 34 C.F.R. § 300.503(b); *see also* N.C. GEN. STAT. § 115C-109.5.

In *El Paso Indep. Sch. Dist. v. Richard R.*, the Western District of Texas found the withholding exception to the statute of limitations applied because a school district failed to provide a student's parents with a copy of the procedural safeguards and a PWN when the school district refused to evaluate the student's eligibility under the IDEA after a request from the parents. 567 F. Supp. 2d 918 (W.D. Tex. 2008). The parent's request for an evaluation in *Richard R.* was verbal and was memorialized in notes by the Assistant Principal: "Parent has requested possible Sp. Ed. Testing. Please Keep copies of student work, etc. you may think is important to show (90 days)." *Id.* at 946. Following the parent's request, the school district failed to timely evaluate the child for eligibility under the IDEA. *Id.* at 952.

The school district in *Richard R.* unsuccessfully argued that the parent "did not in fact request a referral, but instead raised the possibility of a referral." *Id.* at 946. CMS argues that *Richard R.* differs from this case because the parent in *Richard R.* clearly and unmistakably requested that the school district evaluate the child for eligibility under the IDEA. *Id.* at 945-46;

10

(DE 18 at 15-16). Unlike the explicit parental request in *Richard R.*, CMS argues that J.B. and members of A.B.'s Section 504 team never made an initial referral or request for CMS to evaluate A.B. under the IDEA. (DE 18 at 17-18). Moreover, CMS holds that the record does not support the SHRO's finding that the February 2013 email was "essentially requesting" evaluation. (DE 18 at 21). Consequently, CMS argues that it was not required to provide A.B.'s parents with a copy of the procedural safeguards or a PWN following its receipt of the February 2013 email because the email did not explicitly ask for an initial referral or request an evaluation under the IDEA. (DE 18 at 22; DE 12 at 255).

In response, Defendants argue that the SHRO correctly applied the holding in *Richard R.* because J.B. submitted a request for evaluation when he provided CMS with the February 2013 email from A.B.'s psychologist. (DE 19 at 21). Defendants cite two cases in support of this assertion. *See, e.g., Las Lunas Public Schs.*, 111 LRP 72632 (N.M. SEA, May 30, 2011) (citing 34 C.F.R. § 300.301(b) for the proposition that "magic words in writing are not necessary for a Parent's request for evaluation"); *Chichester Sch. Dist.*, 114 LRP 24895 (Penn. SEA April 30, 2014) ("While the parent did not use the magic words 'I request an evaluation' . . . it is clear that she repeatedly sought the District's help in addressing Student's special needs"). Additionally, Defendants repeatedly highlight the language of the February 2013 email, which stated: "We understand that with her specific diagnoses, [A.B.] qualifies as OHI and is eligible for an IEP – is tutoring covered by an IEP? Is there something that is covered by an IEP that can benefit her?" (DE 12 at 255).

Here, the email says that A.B. qualifies as OHI and is eligible for an IEP. Both terms are synonymous with the IDEA and employees at the school who received the letter would know this. For example, OHI stands for "other health impaired" and is one type of eligibility a disabled

student can have under the IDEA. *Lyons v. Smith*, 829 F. Supp. 414, 416 (D.D.C. 1993); 20 U.S.C. 1401(3)(A). Similarly, IEP stands for "individualized education plan." After determining that a student is eligible under the IDEA, the school is required to provide the student with an IEP that "describes the child's unique needs and the state's plan for meeting those needs." *R.F.*, 919 F.3d at 241; 20 U.S.C. § 1414(d)(1)(A)(i). Thus, the letter that J.B. gave to the school from A.B.'s psychologist said that, based on A.B.'s diagnoses, she qualifies as other health impaired under the IDEA and is eligible for an individualized education plan. The letter then asks what type of benefits are covered under the individualized education plan. This is, at a minimum, an evaluation request because for CMS to respond to this letter—which asks what services are available to A.B. under the IDEA—it must first determine whether A.B. is eligible.

Other courts have held that a communication which only informed the school of a child's diagnoses can trigger the school's duty to evaluate the child under the IDEA, even though the parents did not explicitly request an evaluation. *See, e.g., R.S. v. Morgan Cnty. Bd. of Educ.*, No. 3:18-CV-80, at *12 (N.D.W. Va. June 18, 2019) (finding the school district's obligation to evaluate was triggered when the parents shared information regarding their child's diagnoses, including ODD, Disruptive Behavior Disorder, and ADHD, though the parents did not explicitly request an evaluation); *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625 (3d Cir. 2015) ("[W]here parents neither knew nor reasonably should have known of the special needs of their child or of the educational system's failure to respond appropriately to those needs, the other partner in this endeavor—the school district itself—still has its independent duty to identify those needs within a reasonable time period and work with the parents and the IEP team to expeditiously design and implement an appropriate program of remedial support."). Here, the February 2013 email did more than simply inform the school of A.B.'s diagnoses, which alone can be sufficient to trigger the

school's duty to evaluate the child. The email also used keywords from the IDEA and asked what type of resources were available to A.B. under the IDEA. This constitutes an evaluation request as no "magic words" are required. Accordingly, because CMS failed to provide A.B.'s parents with a copy of the procedural safeguards or a PWN following receipt of the February 2013 email, the withholding exception to the statute of limitations applies and prevents A.B.'s claims from being time barred. The Court thus confirms the SHRO's decision.

### B.    CMS' Motion to Dismiss Defendants' Counterclaim

Defendants filed an Answer to CMS' Amended Complaint that included a counterclaim requesting this Court enter an Order with an independent final legal determination that CMS violated the procedural and substantive requirements of the IDEA, thus denying A.B. a FAPE; order CMS to provide A.B. with compensatory special education and related services for the amount of time the Court determines a FAPE was denied; order CMS to reimburse A.B.'s parents for any expenses incurred as a result of CMS' failure to meet the requirements of the IDEA, including but not limited to, the costs and expenses incurred for A.B. to attend any private therapies, and the tuition and all associated costs and expenses, including transportation, incurred for A.B. to attend a treatment center in New Hampshire and a therapeutic boarding school in Utah. Of note, these are the same underlying claims that were pending on remand before the ALJ at the time CMS filed in federal court. Accordingly, no state administrator has ruled on the merits of Defendants' counterclaim as the only issue addressed was the statute of limitations.

After Defendants filed a counterclaim, CMS filed a Motion to Dismiss Defendants' Counterclaim for lack of subject-matter jurisdiction, arguing that this Court does not have federal subject-matter jurisdiction for Defendants' Counterclaim because (1) Defendants are not an aggrieved party, (2) Defendants failed to exhaust all administrative remedies, and (3) none of the exceptions to the IDEA's exhaustion requirement apply. (DE 32 at 2). Defendants argue that they

13

have exhausted all administrative remedies in light of *Johnson* because this Court cannot remand to a state agency and, in the alternative, an exception to the exhaustion requirement applies.

        i.      <u>Aggrieved Party</u>

Under 20 U.S.C. § 1415 (i)(2)(A), only a "party aggrieved by the findings and decision" of a state administrative agency "shall have the right to bring a civil action . . . in a district court of the United States." The Fourth Circuit has held that parties who receive favorable administrative decisions from hearing officers "are not parties aggrieved. Thus, the statute does not provide for their access to either the state or federal courts." *Robinson v. Pinderhughes*, 810 F.2d 1270, 1275 (4th Cir. 1987); *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ*., 773 F.3d 509, 514-15 (4th Cir. 2014) ("We have consistently held that a plaintiff must exhaust her administrative remedies before bringing [an IDEA] action.").

Here, the state administrative agency remanded A.B.'s case to the ALJ after the SHRO found that the withholding exception to the statute of limitations applied. Thus, at the time CMS brought the instant civil action, the only decision of the state administrative agency was that the statute of limitations did not bar A.B.'s underlying claims. However, no decision on the merits of A.B.'s underlying claims has ever been made as CMS brought the instant suit after the SHRO's decision. As A.B. was the prevailing party before the SHRO, and the state administrative agency has not ruled on the merits of A.B.'s underlying claims, the only aggrieved party at this time is CMS as it lost on its affirmative defense. As such, A.B. is statutorily barred from bringing the counterclaim as she is not an aggrieved party. Regardless, even if A.B. was an aggrieved party, she failed to exhaust all administrative remedies before bringing the counterclaim and cannot show that an exception applies.

ii.     <u>Exhaustion Requirement</u>

IDEA is a federal law that requires exhaustion of administrative remedies before seeking relief in federal court. "Congress created a detailed administrative scheme for aggrieved parents to pursue in order to exhaust their remedies under IDEA before filing a federal claim." *Koster v. Frederick Cty. Bd. of Educ.*, 921 F. Supp. 1453, 1455 (D. Md. 1996). "Whether a plaintiff has properly exhausted all administrative remedies is a pure question of law." *O.V. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:17-cv-691, 2018 U.S. Dist. LEXIS 96862, at *43 (M.D.N.C. June 6, 2018) (citing *E.L. ex rel. Lorsson v. Chapel-Hill Carrboro Bd. of Educ*, 773 F.3d 509, 514 (4th Cir. 2014)). The Fourth Circuit has explained that a "federal district court's jurisdiction under the IDEA is limited to review of the final 'findings and decision' of the administrative proceedings. . . . Thus, where administrative remedies have not been exhausted, parties cannot maintain an action in federal court." *M.E. ex rel. C.E. v. Buncombe Cty. Bd. of Educ.*, 72 F. App'x 940, 942 (4th Cir. 2003) (citing 20 U.S.C. § 1415(i)(2)(A)).

Here, Defendants' counterclaim—which alleges various procedural and substantive denials of FAPE under the IDEA and seeks compensatory relief—is a re-assertion of their underlying claims that were remanded to the ALJ and which have yet to be ruled on. At the state administrative agency, Defendants' initial petition was dismissed by the ALJ as barred by the statute of limitations. In dismissing the case, the ALJ did not reach the merits of Defendants' underlying claims. Defendants' appealed to the SHRO. The SHRO found that the withholding exception to the statute of limitations applied and that Defendants' claims were not barred. The SHRO did not rule on the merits of Defendants' underlying claims and instead reversed the ALJ's original decision and remanded for the ALJ to rule on the merits. Before the ALJ ruled on the merits, CMS brought the instant suit. As such, there has been no decision, let alone a final decision,

15

on the merits of Defendants' counterclaim.  Accordingly, Defendants have failed to exhaust all administrative remedies before bringing the counterclaim in federal court.

CMS' argument, that IDEA claims are exhausted after parents go through the administrative process prior to filing in federal court regardless of whether the state administrative agency has ruled on the merits of the claims, is unavailing in light of Fourth Circuit caselaw.[2]  In *Buncombe County*, an ALJ dismissed a child's IDEA claim as untimely without reaching the merits.  After exhausting administrative remedies, the parents brought an action in federal court.  After the federal district court affirmed the ALJ's decision, the Fourth Circuit reversed, holding that the IDEA claim was not time barred.  On remand, the district court "declined to remand the matter for additional state administrative proceedings, concluding that it could address the merits of [the child's] claim."  *M.E. ex rel. C.E. v. Buncombe Cty. Bd. of Educ.*, 72 F. App'x 940, 941– 42 (4th Cir. 2003) (internal quotations and citations omitted).  After the district court ruled on the merits, the case was again appealed.  The Fourth Circuit held that because "the ALJ did not consider the merits of her claim . . . there were no administrative 'findings or decision' regarding the merits of [the child's] claim for the district court to review and the district court did not have jurisdiction under § 1415(i)(2) to consider the merits of [the] claim in the first instance."  *Id.*  Thus, like the ALJ in *Buncombe County*, the ALJ here has not considered the merits of A.B.'s underlying IDEA claims and, as there is no finding or decision from the state administrative agency on the IDEA claims, this Court lacks jurisdiction over Defendants' counterclaim.

---

[2] Defendants' argument that *Johnson* removes any exhaustion issues because federal district courts can no longer remand or affirm decisions of the state administrative agency and must instead issue independent legal determinations is equally unavailing.  The Fourth Circuit in *Johnson* did not discuss the exhaustion requirement, and Defendants cite to no portion of *Johnson* where the Fourth Circuit eviscerated the exhaustion requirement.  *Johnson v. Charlotte-Mecklenburg Sch. Bd. of Educ.*, 20 F.4th 835, 838 (4th Cir. 2021).

iii.     <u>Exceptions to the Exhaustion Requirement</u>

There are three "narrow" exceptions to the exhaustion requirement whereby a party need not exhaust its administrative remedies under the IDEA before bringing a claim in federal court. *Learning Disabilities Ass'n of Maryland, Inc. v. Bd. of Educ. of Baltimore Cty*., 837 F. Supp. 717, 722 (D. Md. 1993). These three exceptions are when "1) the administrative process would have been futile; 2) the school board failed to give [the parents] proper notification of their administrative rights; and 3) exhaustion would have worked severe harm upon the [child]." *Koster v. Frederick Cty. Bd. of Educ*., 921 F. Supp. 1453, 1455 (D. Md. 1996). The burden of proving an exception applies is on the parting seeking to avoid the mandate. *Doe v. Alfred*, 906 F. Supp. 1092, 1097 (S.D.W. Va. 1995). Here, Defendants cannot show that any exception to the exhaustion requirement applies.

a.     *Futility*

"The futility exception applies when the IDEA violation at issue is unresolvable through the appeals process." *Koster v. Frederick Cty. Bd. of Educ*., 921 F. Supp. 1453, 1455 (D. Md. 1996) (citing *J.G. v. Board of Educ. of Rochester Cty*., 830 F.2d 444 (2d Cir.1987); *St. Louis Dev. Disabilities Treatment Ctr. Parents Ass'n v. Mallory*, 591 F. Supp. 1416 (W.D. Mo.), *aff'd*, 767 F.2d 518 (8th Cir. 1985)). Defendants argue that they have taken all measures to secure A.B.'s rights before the state administrative agency and despite the passage of four years have yet to receive a decision on the merits. The Court is aware of the timeline of this case, but Defendants have provided insufficient evidence to show that the IDEA claims are unresolvable at the state administrative agency. The IDEA claims at issue are the exact type of claims decided every day by ALJs. The fact that the ALJ was not able to rule on the merits of the IDEA claims at issue on remand before CMS filed the instant suit has no bearing on the state administrative agency's

17

overall ability to resolve these claims. Moreover, Defendants have failed to show how the ALJ would not be able to rule on the IDEA claims once the Court issues a legal determination confirming the SHRO.

Defendants further argue that "[i]f this Court dismisses A.B. and J.B.'s claims and requires them to re-file in OAH, CMS will again argue A.B. and J.B.'s claims should be dismissed under the statute of limitations." (DE 33 at 15). This is incorrect. As Defendants' underlying IDEA claims were pending on remand before the ALJ for a decision on the merits at the time CMS filed the instant suit, an independent legal determination confirming the SHRO's decision and dismissing Defendants' counterclaim for failure to exhaust administrative remedies does not end the case at the agency level. Instead, the underlying IDEA claims remain before the ALJ and await his decision on the merits. Thus, Defendants would not be required to re-file as the underlying IDEA claims remain before the ALJ on remand after this Court confirms the SHRO's decision. As such, Defendants have failed to show that the futility exception applies.

<i>b.   Proper Notification of Administrative Rights</i>

The second exception argued by Defendants is that exhaustion is not required because CMS failed to provide them with adequate explanation of their administrative rights under the IDEA. In *Koster*, the court found that notification was proper when a school provided parents with a booklet that included "a detailed list of the student's and parents' due process rights including step by step instructions on how parents can avail themselves of the hearing appeals procedure." *Koster v. Frederick Cty. Bd. of Educ.*, 921 F. Supp. 1453, 1456 (D. Md. 1996). In particular, the pamphlet in *Koster* referenced sections of the IDEA, explained when a hearing was available, advised whom the parents need contact to arrange a hearing, and notified parents that they have a right to counsel. *Id.*

18

While Defendants are correct that CMS failed to timely provide a copy of their administrative rights (*i.e.*, procedural safeguards) as required by law when they requested that the school evaluate A.B. for eligibility under the IDEA, this is insufficient to prevail on the proper notification exception because CMS did provide notice. An affidavit of Dr. Harrill, the principal of A.B.'s school, shows that CMS provided annual notices to parents regarding the rights of students with disabilities under the IDEA. (DE 12 at 38–39). Moreover, on September 4, 2013, after a meeting with A.B.'s Section 504 team, J.B. signed a parental notice form that he had received a copy of the Parent-Student Rights and Procedural Safeguards. (*Id.* at 588). The notices direct parents to the procedural safeguards section of the Parent-Student handbook which is publicly accessible online. (*Id.* at 40–42). The procedural safeguards section references the IDEA statute, explains students' and parents' due process rights, provides an overview and outline for filing a due process petition, and notifies parents that they have a right to counsel. This is a proper notification of administrative rights under the IDEA and precludes an exception to the exhaustion requirement.

c.    *Severe Harm*

Exhaustion is not required when it would "work severe harm upon a litigant." *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1095 (1st Cir. 1989) (emphasis removed). "[This] is consistent with the legislative history, which warns that exhaustion is not necessary when 'an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)." *Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir. 2000) (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir.1994)). Some courts have also analyzed this exception as irreparable harm and note that the exception "is to be sparingly invoked." *Komninos*, 13 F.3d at 779; *Rose*, 214 F.3d at 212.

19

Defendants assert that A.B.'s failure to receive any remedies during the pendency of this case for CMS' alleged violations of the IDEA show severe harm. Defendants' argument is unavailing as no remedy can be provided until a party is successful on the merits of an IDEA claim. Moreover, courts that analyze this exception tend to look at whether there is severe and irreversible harm to a student's health or education, normally because the student is still enrolled at the school that is allegedly violating the IDEA. *See, e.g.*, *Rose*, 214 F.3d at 212; *Koster*, 921 F. Supp. at 1456. Here, the undisputed facts show that A.B.'s parents removed her from CMS and that A.B. currently attends online classes through a therapeutic boarding school located in Utah. Defendants have failed to provide evidence that A.B.'s health or education will be severely or irreversibly harmed as she is no longer enrolled at CMS and is receiving specialized education and care. Moreover, Defendants seek no prospective relief for irreparable or ongoing harm to A.B., only compensatory relief for past violations of a FAPE. Accordingly, Defendants cannot prevail on the severe harm exception.

## IV.  CONCLUSION

The Court finds that the withholding exception to the statute of limitations applies and Defendants' underlying IDEA claims are not time barred. As Defendants' underlying IDEA claims were remanded to the ALJ for a decision on the merits when Plaintiff filed the instant suit, an independent legal determination confirming the SHRO's decision does not end the case at the agency level. Instead, the underlying IDEA claims remain before the ALJ and await his decision on the merits.

Plaintiff's motion to dismiss Defendants' counterclaim is granted. Defendants' counterclaim is dismissed without prejudice to allow A.B.'s parents an opportunity to pursue administrative relief on the substance of the underlying IDEA claims. Defendants are welcome to

file their own complaint in federal court after the state administrative agency issues a decision on the merits, thus exhausting their administrative remedies.

**IT IS, THEREFORE, ORDERED** that:

1.    The withholding exception to the statute of limitations applies and Defendants' underlying IDEA claims are not time barred.  Such claims are now before the ALJ and await his decision on the merits.

2.    Plaintiff's Motion to Dismiss Defendants' Counterclaim, (DE 31), is **GRANTED without prejudice** for Defendants to pursue their underlying IDEA claims pending before the ALJ.

**SO ORDERED.**

The Clerk is directed to close this case.

Signed: March 31, 2022

Robert J. Conrad, Jr.
United States District Judge