**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1478

CHARLOTTE-MECKLENBURG COUNTY BOARD OF EDUCATION,

      Plaintiff – Appellant,

  v.

ALEAH BRADY, Individually, and by and through parent or guardian, Jason Brady; JASON BRADY, Individually,

      Defendants – Appellees.

------------------------------

NORTH CAROLINA SCHOOL BOARDS ASSOCIATION,

      Amicus Supporting Appellant,

COUNCIL OF PARENT ATTORNEYS AND ADVOCATES,

      Amicus Supporting Appellee.

No. 22-1532

CHARLOTTE-MECKLENBURG COUNTY BOARD OF EDUCATION,

      Plaintiff – Appellee,

  v.

ALEAH BRADY, Individually, and by and through parent or guardian, Jason Brady; JASON BRADY, Individually,

Defendants – Appellants.

------------------------------

COUNCIL OF PARENT ATTORNEYS AND ADVOCATES,

Amicus Supporting Appellant,

NORTH CAROLINA SCHOOL BOARDS ASSOCIATION,

Amicus Supporting Appellee.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:18-cv-00463-RJC-DCK)

Argued: March 7, 2023

Decided: April 19, 2023

Before THACKER and HEYTENS, Circuit Judges, and Joseph DAWSON, III, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Thacker wrote the opinion, in which Judge Heytens and Judge Dawson joined.

**ARGUED:** Christopher Zemp Campbell, CAMPBELL SHATLEY, PLLC, Asheville, North Carolina, for Appellant/Cross-Appellee. Stacey Marlise Gahagan, GAHAGAN PARADIS, PLLC, Durham, North Carolina, for Appellees/Cross-Appellants. **ON BRIEF:** Kristopher L. Caudle, CAMPBELL SHATLEY, PLLC, Asheville, North Carolina, for Appellant/Cross-Appellee. Selene A. Almazan-Altobelli, COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, INC., Towson, Maryland; Ellen Saideman, LAW OFFICE OF ELLEN SAIDEMAN, Barrington, Rhode Island, for Amicus Council of Parent Attorneys and Advocates, Inc. Justice Warren, Christine T. Scheef, NORTH CAROLINA SCHOOL BOARDS ASSOCIATION, Raleigh, North Carolina, for Amicus North Carolina School Boards Association.

THACKER, Circuit Judge:

This case involves an appeal by the Charlotte-Mecklenburg County Board of Education ("CMS") and cross-appeal by Jason Brady ("Brady"), individually and on behalf of his child, A.B. Brady initially filed an administrative action in North Carolina, alleging that CMS violated the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 et seq., by failing to provide A.B. with a free appropriate public education ("FAPE") through an individualized education plan ("IEP").

The administrative law judge ("ALJ") dismissed Brady's action as time barred by a one year statute of limitations. Following Brady's successful appeal to a state hearing review officer ("SHRO"), CMS filed an original civil action in the United States District Court for the Western District of North Carolina, seeking a judicial determination that the statute of limitations barred Brady's administrative action. Brady and A.B. filed a counterclaim, asking the district court to decide the merits of the underlying IDEA claim. The district court agreed with the SHRO and held that the statute of limitations did not bar Brady's IDEA claim, but it held that Brady needed to exhaust his administrative remedies before bringing the merits to federal court. Both parties appeal.

We affirm the district court's holding as to CMS's appeal and hold that the statute of limitations does not bar Brady's IDEA claim. But, because Brady's counterclaim is compulsory, we conclude that he need not exhaust. Therefore, we reverse on that issue and remand to the district court for further proceedings.

3

I.

A.

<u>The IDEA and Administrative Process</u>

"The IDEA provides funds for states to educate children with disabilities, subject to conditions imposing substantive requirements on the education that is provided." *R.F. v. Cecil Cnty. Pub. Schs.*, 919 F.3d 237, 241 (4th Cir. 2019). "In return for the receipt of federal education funding, states are required by the IDEA to provide each of their disabled children with a FAPE." *M.M. ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 526 (4th Cir. 2002). "[A] FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cnty. Schs.*, 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. § 1401(9), (26), (29)). "The mechanism by which a state provides a FAPE is an IEP--a document that describes the child's unique needs and the state's plan for meeting those needs." *R.F.*, 919 F.3d at 241.

To be eligible for special education, and thus an IEP, a child's disability must qualify as follows:

> (i) intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain

4

>    injury, other health impairments, or specific learning disabilities; and
>    (ii) who, by reason thereof, needs special education and related services.

20 U.S.C. § 1401(3)(A).

Parents who believe their child is eligible for an IEP "may initiate a request for an initial evaluation to determine" whether the child has a qualifying disability. 20 U.S.C. § 1414(a)(1)(B). When the parents make such a request, the educational agency must provide them "[a] copy of the procedural safeguards." *Id.* § 1415(d)(1)(A). The procedural safeguards include notice of parents' rights to examine their child's records related to the IDEA, participate in meetings, obtain independent educational evaluations of their child, and file an administrative complaint with respect to the IDEA. *Id.* § 1415. An educational agency must also provide prior written notice ("PWN") to the parents when it "[r]efuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child." 34 C.F.R. § 300.503(a)(2). The PWN must include, among other things, a description of the action refused by the agency, an explanation of why the agency refused to take the action, a statement that the parents have procedural safeguards, and sources for parents to contact to obtain assistance. *Id.* § 300.503(b).

Parents who question "the identification, evaluation, or educational placement of [their] child, or the provision of a [FAPE] to such child" may commence a formal administrative adjudicative process. 20 U.S.C. § 1415(b)(6)(A). In North Carolina, a parent begins that process by filing a complaint with the North Carolina Office of Administrative Hearings ("OAH"), which triggers "due process" proceedings before an

5

ALJ.  *See* N.C. Gen. Stat. § 115C-109.6(a), (f); *see also* 20 U.S.C. § 1415(f), (h) (establishing rules for due process hearings).

The complaint must set forth a violation that occurred "not more than one year before the party knew or reasonably should have known about the alleged action that forms the basis of the petition." N.C. Gen. Stat. § 115C-109.6(b).  But the one year statute of limitations "shall not apply to a parent if the parent was prevented from requesting the hearing due to . . . the local educational agency's withholding of information from the parent that was required under State or federal law to be provided to the parent." *Id.* § 115C-109.6(c) (the "withholding exception").

At the time relevant to this case, an ALJ's decision became final unless the parent appealed to a SHRO.  N.C. Gen. Stat. §§ 115C-109.6(f) (2006); 115C-109.9 (repealed).  If the parent did appeal, the SHRO's decision became "final unless an aggrieved party [brought] a civil action under subsection (d)." *Id.* § 115C-109.9(a) (repealed).  Subsection (d) provided, "any party who is aggrieved by the decision of the [SHRO] under this section may institute a civil action . . . in federal court as provided in 20 U.S.C. § 1415." *Id.* § 115C-109.9(d) (repealed).  In turn, 20 U.S.C. § 1415 provides, "[a]ny party aggrieved by the findings and decision" of the administrative process "shall have the right to bring a civil action with respect to the complaint." 20 U.S.C. § 1415(i)(2)(A).

B.

Brady's IDEA Claim

A.B. was enrolled as a student in CMS from 2005 to 2015.  During that time, A.B. exhibited concerning behaviors revealing the need for specialized attention.  Because of

6

her impairments, CMS provided A.B. with accommodations pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).[1] But the record reveals that CMS did not evaluate A.B.'s eligibility for an IEP pursuant to the IDEA, a program distinct from Section 504.

In compliance with Section 504, A.B. had a 504 team that met regularly to review her accommodations. A.B.'s Section 504 team included her parents and various CMS personnel. Relevant here, A.B.'s 504 team had a scheduled meeting on February 26, 2013. Prior to that meeting, Brady forwarded the 504 team an email he had received from A.B.'s psychologist. The psychologist's email said, in relevant part, "We understand that with her specific diagnoses, [A.B.] qualifies as OHI[2] and is eligible for an IEP – is tutoring covered by an IEP? Is there something that is covered by an IEP that can benefit her?" J.A. 47 (alteration in original).[3] When he forwarded the email to the 504 team, Brady explained that he wanted to discuss the topics raised in the psychologist's email during the 504 team meeting on February 26, 2013. The 504 team reconvened on September 4, 2013, and after

---

[1] Section 504, a general nondiscrimination statute, provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Any program or activity" includes local educational agencies like CMS. *Id.* § 794(b)(2)(B). Pursuant to Section 504, then, schools are prohibited from discriminating against students with a disability and must ensure they are not denied the benefit of a public education.

[2] OHI stands for "Other Health Impaired." OHI is a category of impairment pursuant to the IDEA for which a student may be eligible for an IEP. *See* 20 U.S.C. § 1401(3)(A).

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

7

that meeting Brady "signed a parental notice form and checked a box directly above his signature stating 'I have received a copy of the Parent-Student Rights and Procedural Safeguards.'" J.A. 47.

A.B.'s condition continued to worsen and in 2015, the assistant principal at her school informed A.B.'s parents that they "needed to plan for A.B. to attend school elsewhere because the school was not prepared to deal with A.B." J.A. 47. A.B.'s parents removed her from CMS based upon this representation and the advice of medical professionals. A.B.'s parents enrolled her first in a short-term residential treatment center and then in a long-term therapeutic boarding school. A.B. returned home in December 2017 and continued her studies through online classes.

On January 22, 2018, Brady filed a Petition for Contested Case Hearing in the North Carolina OAH, alleging that CMS violated the IDEA by failing to provide A.B. with a FAPE. The ALJ issued a final decision that did not address the merits of Brady's IDEA claim. Instead, the ALJ held that Brady knew or should have known about his claim prior to January 2017, and that no exception to the statute of limitations applied. Therefore, the ALJ dismissed Brady's administrative action.

Brady appealed to a SHRO. The SHRO issued a written decision reversing the ALJ. The SHRO determined that the withholding exception applied because "CMS failed to provide notice to A.B.'s parents of the IDEA's procedural safeguards or issue a [PWN] of CMS's refusal to evaluate A.B. under the IDEA." J.A. 44. The SHRO did not decide the merits. Instead, the SHRO remanded the case to the ALJ.

Before the ALJ took any action on remand, CMS filed this civil action pursuant to N.C. Gen. Stat. § 115C-109.9(d) and 20 U.S.C. § 1415(i)(2)(A). CMS sought a judicial determination only as to the statute of limitations. In response, Brady and A.B. filed a counterclaim asking the district court to declare that CMS violated the IDEA by failing to provide A.B. with a FAPE and order CMS to provide A.B. with compensatory special education. These were the same claims Brady made in his administrative petition.

As to the statute of limitations question, the district court held that Brady made a request for CMS to evaluate A.B. for an IEP when he forwarded the psychologist's email to the 504 team and stated that he wanted to discuss the issues raised by the psychologist. The district court determined that CMS did not send Brady a copy of the procedural safeguards upon receiving his request, nor did it send a PWN of its refusal to evaluate A.B. for an IEP. Therefore, the district court held that the withholding exception applied such that Brady's IDEA claim was not time barred.

As to Brady and A.B.'s counterclaim, the district court concluded that because the SHRO's decision was favorable to them, Brady and A.B. were not "aggrieved parties" pursuant to 20 U.S.C § 1415(i)(2)(A). The district court went on to explain that even if Brady and A.B. were aggrieved parties, it would still dismiss the counterclaim. In the district court's view, Brady and A.B. were required to exhaust their administrative remedies before bringing their claim to federal court, unless an exception to exhaustion applied. The district court determined that Brady and A.B. have not exhausted because there has been no administrative decision on the merits of the IDEA petition.

9

The district court noted that the SHRO had remanded the case to the ALJ, and that the action was still pending before the ALJ when CMS filed this case. Thus, the district court believed "the underlying IDEA claims remain before the ALJ and await his decision on the merits." J.A. 62. And because the district court held that no exception to the exhaustion requirement applied, it dismissed the counterclaim without prejudice.

II.

An action filed in federal district court pursuant to the IDEA "is an original civil action, not an appeal from a state administrative agency." *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 844 (4th Cir. 2021) (citing *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 382, 387 (4th Cir. 2000); 20 U.S.C. § 1415(i)(2)(A)). District courts "conduct a modified de novo review, giving due weight to the underlying administrative proceedings," but are empowered to receive and consider evidence outside the administrative record. *R.F. v. Cecil Cnty. Pub. Schs.*, 919 F.3d 237, 244 (4th Cir. 2019) (citation and internal quotation marks omitted); 20 U.S.C. § 1415(i)(2)(C)(ii). In that way, "a district court does not simply affirm, reverse, or vacate the decision of the state administrative agency. Instead, it offers its own independent *de novo* review and conclusion." *Kirkpatrick*, 216 F.3d at 384.

"Whether a district court has accorded the proper 'due weight' to the administrative proceedings is a question of law—or at least a mixed question of law and fact—to be reviewed de novo by an appellate court." *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 531 (4th Cir. 2002). "In conducting our review in an IDEA proceeding, we therefore must examine the entire record, and we must afford 'due weight' to the

10

administrative determinations, applying the standard of review utilized by the district court." *Id.* But "[a]fter giving the administrative fact-findings . . . due weight, if any," this court "is free to decide the case on the preponderance of the evidence, as required by the statute." *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991).

III.

A.

The Statute of Limitations

We begin with CMS's contention that the district court erred in holding that the one year statute of limitations does not bar Brady's underlying IDEA claim because the withholding exception applies. CMS makes two arguments on appeal. First, CMS argues that Brady never requested that A.B. be evaluated pursuant to the IDEA. Therefore, CMS argues it was not required to provide Brady with any information, so none could have been withheld. Second, CMS argues that "[e]ven if certain procedural notices were required to be given to [Brady] under IDEA, the [d]istrict [c]ourt still misapplied the statute of limitations and failed to articulate how CMS 'prevented' [Brady] from timely filing a due process petition." CMS's Opening Br. at 10.

As an initial matter, we agree with the district court that Brady's email to the 504 team was a request for an IDEA evaluation. The IDEA expressly authorizes parents to request an initial evaluation. 20 U.S.C. § 1414(a). However, the manner of making such a request is not defined in the statute or the implementing regulations. *See* 20 U.S.C. § 1414(a)(1)(B); 34 C.F.R. § 300.301(b); N.C. Gen. Stat. § 115C-109.1. CMS concedes

11

that "no 'magic words' are required to request an evaluation," CMS's Opening Br. at 27, but it insists that mere expressions of concern about a student do not suffice.

While Brady's email to the 504 team did not specifically say "I request an IEP evaluation," the email did alert CMS that Brady wanted to discuss the issues raised by A.B.'s psychologist. And, in turn, A.B.'s psychologist's email, which Brady forwarded to CMS, said "We understand that with her specific diagnoses, [A.B.] qualifies as OHI and is eligible for an IEP – is tutoring covered by an IEP? Is there something that is covered by an IEP that can benefit her?" J.A. 47. As the district court explained, OHI and IEP are terms that are "synonymous with the IDEA and employees at the school who received the letter would know this." J.A. 53.

When Brady told CMS he wanted to discuss the email from A.B.'s psychologist, he was in essence telling CMS that he wanted to discuss the psychologist's conclusion that A.B. would qualify as OHI and be eligible for an IEP, and the psychologist's questions regarding what services would be covered by an IEP. We agree with the district court -- "This is, at a minimum, an evaluation request because for CMS to respond to this letter— which asks what services are available to A.B. under the IDEA—it must first determine whether A.B. is eligible." J.A. 54. And because the February 2013 email was a request for evaluation, CMS was required to provide Brady with a copy of the procedural safeguards when he made the request, as well as with PWN of its refusal to evaluate A.B.

CMS next argues that its failure to provide the procedural safeguards and the PWN when Brady made the request did not "prevent" Brady from timely filing an administrative petition. CMS points to Brady's admission that he received a copy of procedural

12

safeguards after the 504 team meeting in September 2013. But as the SHRO explained, a parent who receives notice of procedural safeguards under Section 504, but not notice of procedural safeguards under the IDEA would not have received notice of the right to the procedures enabling state administrative review of alleged IDEA violations, or any of the limitations imposed upon it.

CMS also points to the district court's recognition that CMS mailed annual notices to parents advising them that the procedural safeguards were available online as evidence that Brady was not prevented from filing an administrative action. But the annual notices CMS sends to parents only advise that the Parent-Student Handbook is available on the school's website, and that within the Parent-Student Handbook parents will find a list of various annual notices CMS is required to provide. While that list does include IDEA notices, we have little trouble concluding that the annual notice letter is insufficient to shield CMS. Federal regulations make clear that a "public agency would not meet its obligation in § 300.504(a) by simply directing a parent to the Web site." 71 Fed. Reg. 46693 (Aug. 14, 2006). Indeed, we have held, "[a] school system cannot make parents 'notice-proof' simply by periodically distributing publications containing the law setting forth the 'right, procedure, and time limit' of a request for a due process hearing." *C.M. ex rel. J.M. v. Bd. of Educ. of Henderson Cnty.*, 241 F.3d 374, 388 (4th Cir. 2001) (citation omitted). And we find it difficult to see how Brady -- or any parent -- could know to file an IDEA petition when the school district failed to notify him that it was refusing to evaluate A.B. for an IEP.

13

We hold that Brady was prevented from filing a timely administrative petition because CMS withheld information it was required to provide him. Therefore, Brady's IDEA petition is not barred by the statute of limitations.

B.

The Counterclaim

We next address Brady and A.B.'s cross-appeal in which they argue that the district court erred when it dismissed their counterclaim for failure to exhaust administrative remedies. As we explained above, the counterclaim asked the district court to decide the same issues at the heart of Brady's underlying administrative petition. The district court dismissed the counterclaim, concluding that it lacked subject matter jurisdiction over it. The district court held that Brady and A.B. were not aggrieved parties so they could not bring a federal claim pursuant to 20 U.S.C. § 1415(i)(2). Alternatively, the district court held that it lacked subject matter jurisdiction because Brady and A.B. had not exhausted their administrative remedies.

1.

Standard of Review

We review a district court's factual findings on jurisdiction for clear error and the legal conclusions de novo. *K.I. Durham Public Schs. Bd. of Educ.*, 54 F.4th 779, 788 (4th Cir. 2022). "Generally, '[w]hether a plaintiff has properly exhausted all administrative remedies is a pure question of law that we review de novo.'" *Id.* (quoting *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014)).

14

Of note, however, this court recently determined that the IDEA's exhaustion requirement is not jurisdictional but is instead a claims-processing rule. *See K.I.*, 54 F.4th at 790–92. In doing so, we explained that the Supreme Court has "clearly and consistently cautioned lower courts about the overuse of the term 'jurisdiction.'" *Id.* at 791. To guard against conflating jurisdictional bars with claims-processing rules, "[t]he Court has explained that 'traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.'" *Id.* (quoting *United States v. Wong*, 575 U.S. 402, 410 (2015)). "It instructed that, absent such a clear statement, a time limit is not jurisdictional, even if expressed in mandatory and emphatic terms." *Id.*

In considering the IDEA's exhaustion requirement, we explained that 20 U.S.C. § 1415(l), which "provides that exhaustion of the IDEA's administrative procedures is required before the filing of a civil action when a plaintiff is seeking relief that is available under the IDEA, even if a plaintiff is bringing suit under the ADA, the Rehabilitation Act or similar laws . . . does not mention jurisdiction." *K.I.*, 54 F.4th at 792. And we explained that 20 U.S.C. § 1415(i)(2)(A), which establishes the right of an aggrieved party to bring a civil action, "does not contain language expressly stating that it limits the power of the courts to hear the matter." *Id.* "Thus, the text of the IDEA does not signal a clear congressional intent to limit the jurisdiction of the courts." *Id.*

Though we only applied this holding to exhaustion in *K.I.*, it is equally applicable to § 1415(i)(2)(A)'s aggrieved party requirement for the same reasons. In any event, this is a distinction without a difference in this case because "the distinction between

15

jurisdictional rules and claims-processing rules typically relates to the issues of waiver and forfeiture," and neither applies here. *K.I.*, 54 F.4th at 792.

## 2.

## The IDEA's Pre-suit Requirements

Brady and A.B. argue their counterclaim is not subject to the IDEA's pre-suit requirements because 20 U.S.C. § 1415(i)(2)(A) deals only with an aggrieved party's right to "bring a civil action." Brady and A.B. argue that by filing a counterclaim, they are not "bringing" an action. Instead, they ask this court to adopt the Third Circuit's view that the initial plaintiff brings the action when it files its complaint in federal court. *See Jonathan H. v. The Souderton Area Sch. Dist.*, 562 F.3d 527, 530 (3d Cir. 2009). After that, the case "is an original civil action, not an appeal from a state administrative agency." *Johnson v. Charlotte Mecklenburg Schs. Bd. Of Ed.*, 20 F.4th 835, 844 (4th Cir. 2021) (citing *Kirkpatrick v. Lenoir Cnty. Bd. of Ed.*, 216 F.3d 380, 382 (4th Cir. 2000)).

In *Jonathan H.*, the Third Circuit explained, "The phrase 'bring an action' is defined as 'to sue; institute legal proceedings.'" 562 F.3d at 529 (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)). Thus, "an action is 'brought' when a plaintiff files a complaint." *Jonathan H.*, 562 F.3d at 529. And, while a complaint is proactive, "a counterclaim is reactive" in nature, "because it is filed only after the plaintiff has initiated the case." *Id.* "[A] defendant does not 'bring an action' by asserting a counterclaim; only a plaintiff may 'bring an action' for purposes of the IDEA." *Id.* at 530. Therefore, as long as the counterclaim was compulsory, and timely pleaded in accordance with Federal Rule

16

of Civil Procedure 13, the IDEA's limitations on plaintiffs' "right to a civil action" does not bar the filing of defendants' counterclaim.

The Fifth Circuit has reached the same conclusion. *See Ruben A. v. El Paso Independent Sch. Dist.*, 414 F.App'x 704, 707 (5th Cir. 2011) (adopting the Third Circuit's reasoning and explaining the "IDEA provision specifically applies to '[t]he party bringing the action' and neither expressly nor impliedly limits the filing of counterclaims in response to civil actions brought in federal court"); *see also N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 206 (5th Cir. 2015) (explaining that the holding in *Ruben A.* "was firmly footed in IDEA's specific statute of limitations language, which 'limits the time in which a party may "*bring an action*" in federal court.' We determined that asserting a compulsory counterclaim is not 'bringing an action.'").

We align with the Third and Fifth Circuits in concluding that § 1415(i)(2)(A)'s pre-suit requirements apply only to the party "bringing the action." Therefore, so long as Brady and A.B.'s counterclaim is compulsory, they need not be aggrieved parties nor exhaust their administrative remedies. CMS argues that the counterclaim is not compulsory.

Pursuant to Federal Rule of Civil Procedure 13, a party must file a counterclaim that "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim" and does not require adding another party over whom there would be no jurisdiction. This court has identified four questions to assist in determining whether a counterclaim is compulsory:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the

17

> compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

*Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988).  However, "[a] court need not answer all these questions in the affirmative for the counterclaim to be compulsory . . . [r]ather, the tests are less a litmus, more a guideline."  *Id.*  In fact, "[a] counterclaim may still arise from the same 'transaction or occurrence'[] as a logically related claim even though the evidence needed to prove the opposing claims may be quite different."  *Id.* at 332.

In IDEA cases, we have held that a counterclaim is compulsory where "it arises from the same administrative hearing and review officer's decision, involves the same child and school district, and evokes consideration of the same law."  *Kirkpatrick*, 216 F.3d at 387–88.  Importantly, the IDEA authorizes the aggrieved party "to bring a civil action *with respect to the [administrative] complaint presented*."  20 U.S.C. § 1415(i)(2)(A) (emphasis supplied).

To be sure, CMS's complaint raises only the statute of limitation question.  But the administrative complaint from which the administrative decisions arose presents the same issues of law and fact Brady and A.B. present in their counterclaim.  Both CMS's complaint and the counterclaim involve CMS's actions or inaction during the same time period and relate to the same student.  Though we do not find the IDEA claims time barred, such a holding would have prevented Brady and A.B. from asserting their counterclaim in a later suit.  And while the evidence on the merits is certainly more involved than the evidence on the statute of limitations question, there is a logical relationship between the two claims.

18

Considering all of these factors, we hold that Brady and A.B.'s counterclaim is compulsory and therefore not subject to the IDEA's pre-suit requirements. Thus, we reverse the district court's dismissal of the counterclaim and remand to the district court for further proceedings.

IV.

For the foregoing reasons, we hold that Brady's IDEA claims are not barred by the one year statute of limitations because the withholding exception applies. And because the counterclaim is not subject to the IDEA's pre-suit requirements, we reverse the district court's dismissal and remand for further proceedings.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*